# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| Anthony E. Martinez, | Case No. 2:16-cv-00303-JAD-GWF |
|---|---|
| Petitioner | |
| v. | **Order Denying Petition for Writ of Habeas Corpus** |
| Brian Williams, Sr., et al., | |
| Respondents | |

Anthony E. Martinez brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his Nevada state-court convictions for home invasion and burglary after he entered into a multi-case plea deal.[1] In a three-count petition, Martinez argues that he received ineffective assistance of counsel. Because I find that Martinez has not demonstrated any ground for habeas relief, I deny his petition and close this case.

## Factual[2] and Procedural Background

**A.  A stolen car and a home robbery**

Around 6:30 in the morning on March 14, 2012, Alyssa Farmer noticed that her car was missing from the parking lot of her apartment complex, and she reported it stolen.[3] Police found

---

[1] ECF No. 3.
[2] These facts come from the grand jury testimony.
[3] Ex. 2 at 8–10 (ECF No. 7-2 at 9–11).

the car later that morning and returned it to her.[4]  She did not give anyone permission to take her car.[5]

That same morning, Lidia Henderson left her house.  A neighbor called her and said that somebody had broken into her house.[6]  When Henderson returned to her house, she found the police there,[7] a window broken, and some of her property outside her house.[8]  She valued that property around $3,000 and had not given anyone permission to take it.[9]

Henderson's neighbor had called the police.  Sean Smith was one of the responding officers.[10]  When he got there, he observed a car parked in front of the house.[11]  Henderson's neighbor had given the license plate number in the phone call.  The car's hood was warm to the touch, as if the engine had been recently running.  Smith then spotted Martinez exiting Henderson's backyard through a gate.  Martinez was carrying a laundry basket full of items, and he had stacked a suitcase on top of the basket.[12]  Smith detained Martinez.

**B.     Martinez confesses his crimes to law enforcement**

After receiving the required warnings, Martinez voluntarily confessed his crimes.  He admitted that he had smashed out a window with a rock, a fact that Smith verified.[13]  Martinez

---

[4] *Id.* at 9–10 (ECF No. 7-2 at 10–11).
[5] *Id.* at 10 (ECF No. 7-2 at 11).
[6] *Id.* at 13 (ECF No. 7-2 at 14).
[7] *Id.* at 14 (ECF No. 7-2 at 15).
[8] *Id.* at 15 (ECF No. 7-2 at 16).
[9] *Id.* at 16 (ECF No. 7-2 at 17).
[10] *Id.* at 20 (ECF No. 7-2 at 21).
[11] *Id.* at 21 (ECF No. 7-2 at 22).
[12] *Id.* at 22 (ECF No. 7-2 at 23).
[13] *Id.* at 24 (ECF No. 7-2 at 25).

also told Smith that he had put some of Henderson's items in his pockets.[14] Smith found those items, along with screwdrivers that Martinez had brought to the house.[15] Smith found that Martinez had also taken jewelry, compact discs, electronic items, checkbooks, a car title, coins, and casino chips.[16] Martinez said that he had obtained the stolen car from someone he knew only through an alias, and that he knew that the car was stolen,[17] and that he had used one of his screwdrivers to start the car.[18] Smith learned that the car belonged to Farmer, so he called Farmer and she came to collect her car.[19]

The grand jury indicted Martinez on one count each of possession of a stolen vehicle, home invasion, burglary, grand larceny, and possession of burglary tools ("*Martinez I*").[20] The first four counts are felonies, and the last count is a gross misdemeanor.[21]

## C. Martinez's three-case plea deal

On January 23, 2013, Martinez agreed to plead guilty in a global, three-case deal. In *Martinez I*, he agreed to plead guilty to one count of home invasion. In case C-13-286522-1 ("*Martinez II*"), he agreed to plead guilty to one count of burglary. Martinez and the prosecution stipulated that Martinez could be adjudicated as a "small" habitual criminal under NRS 207.010(1)(a), with a sentence of 5 to 20 years for both counts, running concurrently. The prosecution agreed not to remand a third case ("*Martinez III*") to the justice court and to instead

---

[14] *Id.* at 24–25 (ECF No. 7-2 at 25–26).
[15] *Id.* at 25 (ECF No. 7-2 at 26).
[16] *Id.* at 25–26 (ECF No. 7-2 at 26–27).
[17] *Id.* at 26–27 (ECF No. 7-2 at 27–28).
[18] *Id.* at 27 (ECF No. 7-2 at 28).
[19] *Id.* at 27–28 (ECF No. 7-2 at 28–29).
[20] Ex. 3 (ECF No. 7-3).
[21] *Id.*

3

dismiss it after sentencing if Martinez fulfilled all his obligations under the agreement. But if Martinez did not appear at his interview with Parole and Probation or at any court hearing, then the prosecution could argue for any applicable sentence, including the harsher "large" habitual criminal sentences under NRS § 207.010(1)(b).[22] Along with the guilty plea agreement, the prosecution filed an amended indictment showing that Martinez had five prior felony convictions in three separate cases, thus qualifying him for "large" habitual-criminal adjudication.[23]

Martinez did not fulfill his obligations, and the state district court issued a bench warrant for his arrest after he failed to appear at court.[24] Martinez was eventually taken into custody. He filed a motion to withdraw his plea in *Martinez I*.[25] The state district court denied that motion at a joint sentencing hearing for *Martinez I* and *Martinez II*.[26] But Martinez's failure to appear meant that the parties were free to argue for sentences other than the stipulated sentence. Counsel in *Martinez II* argued for leniency, and counsel in *Martinez I* joined in that argument.[27] The prosecutor argued for sentences of 10 to 25 years under the "large" habitual criminal statute.[28] The state district court held Martinez to the plea agreement and imposed two concurrent sentences of 5 to 20 years under the "small" habitual criminal statute.[29]

---

[22] Ex. 7 at 1–2 (ECF No. 7-7 at 2–3).

[23] Ex. 6 at 3–4 (ECF No. 7-6 at 4–5).

[24] Ex. 8 (ECF No. 7-8).

[25] Ex. 10 (ECF No. 7-10).

[26] Ex. 13 at 3–6 (ECF No. 7-13 at 4–7).

[27] Private, appointed counsel represented petitioner in *Martinez I*. The public defender represented him in *Martinez II*. *Id.* at 6–10 (ECF No. 7-13 at 7–11).

[28] *Id.* at 11–12 (ECF No. 7-13 at 12–13).

[29] *Id.* at 13–14 (ECF No. 7-13 at 14–15).

4

## D. Martinez's state post-conviction proceedings result in no relief.

Martinez appealed. The Nevada Supreme Court affirmed the judgment of conviction, holding that Martinez's plea was knowing and voluntary.[30] Martinez then filed a post-conviction habeas corpus petition in the state district court.[31] The state district court denied the petition,[32] Martinez appealed, and the Nevada Court of Appeals affirmed.[33] Martinez then filed this action, and respondents' answer[34] followed.

## Discussion

### A. Standards for Evaluating a Habeas Petition on its Merits

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35] A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[36] And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the

---

[30] Ex. 26 (ECF No. 8-1).
[31] Ex. 32 (ECF No. 8-7).
[32] Ex. 38 (ECF No. 8-13).
[33] Ex. 44 (ECF No. 8-19).
[34] ECF No. 5.
[35] 28 U.S.C. § 2254(d).
[36] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

facts at hand.[37] Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[38] The "objectively unreasonable" standard is difficult to satisfy;[39] "even 'clear error' will not suffice."[40]

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[41] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[42] "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[43] AEDPA "thus imposes a 'highly deferential standard for evaluating state-court rulings,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[44]

---

[37] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[38] *White*, 134 S. Ct. 1705–06.

[39] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[40] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[41] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[42] *Id.* at 103.

[43] *Id.* at 101.

[44] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[45] The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[46] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[47]

**B.	Evaluating Martinez's claims**

All three of the grounds that Martinez raises in this petition are claims of ineffective assistance of counsel. The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[48] Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[49] In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[50] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[51]

---

[45] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[46] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[47] 28 U.S.C. § 2254(e)(1).

[48] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[49] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[50] *Strickland*, 466 U.S. at 690.

[51] *Id.* at 694.

A reasonable probability is a "probability sufficient to undermine confidence in the outcome."[52] Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[53] "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[54] The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[55]

The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[56] So, I "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'"[57] And I consider only the record that was before the state court that adjudicated the claim on its merits.[58]

---

[52] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000)

[53] *Strickland*, 466 U.S. at 689.

[54] *Harrington*, 562 U.S. at 104.

[55] *Id.*

[56] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[57] *Id.*

[58] *Id.* at 181–84.

### 1. Ground 1–counsel's failure to investigate property value

In ground 1,[59] Martinez claims that counsel failed to investigate the value of the property that he took from Henderson's house. Grand larceny requires the value of the property taken be $650 or more.[60] On this issue, the Nevada Court of Appeals found that Martinez failed to show a reasonable probability that he would not have pleaded guilty had counsel investigated further:

> First, Martinez claimed counsel was ineffective for failing to investigate the value of the property he took. Martinez failed to demonstrate deficiency because he failed to demonstrate further investigation would have revealed that the property was worth less than $650. Further, Martinez was originally charged with four felonies and a gross misdemeanor. Only one of those felonies required a showing that the value of the property was worth more than $650. In exchange for his plea, the State agreed to allow Martinez to plead to only one felony, to dismiss the other charges, and to dismiss another pending case. Therefore, Martinez failed to demonstrate resulting prejudice because he failed to demonstrate a reasonable probability he would not have pleaded guilty had further investigation been done. Accordingly, the district court did not err in denying this claim.[61]

By itself, this is a reasonable application of *Strickland*. According to the amended indictment, Martinez had five prior felony convictions in three cases.[62] Martinez thus qualified for "large" habitual criminal adjudication, which had harsher sentences, including life imprisonment without the possibility of parole.[63] Martinez faced four felony counts in this case alone. If he was found guilty, adjudicated as a habitual criminal, and had consecutive sentences

---

[59] Ground 3 contains allegations that counsel failed to discuss any potential defense that the value of the items stolen were not worth $650 or more. My decision on ground 1 *supra* covers these related allegations in ground 3.

[60] Nev. Rev. Stat. § 205.220.

[61] Ex. 44 at 2 (ECF No. 8-19 at 3).

[62] Ex. 6 at 3–4 (ECF No. 7-6 at 4–5).

[63] *See* Nev. Rev. Stat. § 207.010(1)(b).

imposed, then he might have been sentenced, formally or effectively, to life in prison. And the Nevada Court of Appeals did not mention that Martinez's plea agreement included dropped charges in *Martinez II* and *Martinez III*. This point further strengthens the Nevada Court of Appeals decision because, had Martinez been found guilty in those other two cases, he would have faced even more time in prison. Because Martinez has not demonstrated a reasonable probability either that he would have received a more favorable plea agreement or that he would have decided to go to trial on the remaining counts had counsel investigated and found that the value of the property was less than $650, ground 1 lacks merit. I thus deny relief on this claim.

### 2. Ground 2—counsel's failure to investigate and present mitigating evidence of brain damage and drug abuse

In ground 2, Martinez claims that counsel failed to investigate and present mitigating evidence of his brain damage and drug abuse at the sentencing hearing. Martinez also claims that counsel failed to investigate whether brain damage, drug abuse, or use of prescribed mental-health medications rendered him incompetent to plead.[64] On direct appeal, the Nevada Supreme Court recounted the plea proceedings:

> During argument on Martinez's motion [to withdraw his plea], the district court read aloud from the guilty plea agreement and canvass, both of which clearly explained the relevant sentencing considerations, including that he was ineligible for probation, and contradicted Martinez's contention. Counsel for Martinez conceded that the record contradicted the claim, but suggested that Martinez's history as a boxer may have contributed to memory impairment which impacted his ability to understand the proceedings. The district court judge, who had conducted the plea canvass and therefore had an opportunity to observe whether Martinez understood the agreement, rejected his assertion and concluded that the plea was knowingly and intelligently entered. Martinez fails to demonstrate that the district court abused its

---

[64] Grounds 1 and 3 contain allegations that are redundant to the allegations in ground 2. My decision on ground 2 covers the related allegations in grounds 1 and 3.

10

> discretion. *See Riker v. State*, 111 Nev. 1316, 1322, 905 P.2d 706, 710 (1995) ("On appeal from a district court's denial of a motion to withdraw a guilty plea, this court 'will presume that the lower court correctly assessed the validity of the plea, and we will not reverse the lower court's determination absent a clear showing of an abuse of discretion.'" (quoting *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986))).[65]

Then, in Martinez's appeal from the denial of the post-conviction habeas corpus petition, the Nevada Court of Appeals held that Martinez did not show that counsel was ineffective for this failure to further investigate his competency:

> Second, Martinez claimed counsel was ineffective for failing to investigate his competency. Martinez claimed he suffered brain damage from his boxing career and he was taking Zoloft and Trazodone at the time of his plea. Martinez failed to demonstrate counsel was deficient because he failed to demonstrate he did not have the ability to consult with his attorney with a reasonable degree of rational understanding and he did not have a rational and factual understanding of the proceedings against him. *See Melchor-Gloria v. State*, 99 Nev. 174, 179-80, 660 P.2d 109, 113 (1983) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Therefore, the district court did not err in denying this claim.[66]

The standard for determining competence to plead guilty is the same as the standard for determining competence to stand trial.[67] To stand trial, a defendant must have both "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'"[68] The state courts reasonably could have concluded that Martinez's counsel did not perform deficiently, and that Martinez suffered no prejudice from this failure to further explore his brain-damage and drug-abuse issues. The sentencing hearing combined both *Martinez I* and *Martinez II*. Counsel

---

[65] Ex. 26 at 1–2 (ECF No. 8-1 at 2–3).

[66] Ex. 44 at 2 (ECF No. 8-19 at 3).

[67] *Godinez v. Moran*, 509 U.S. 389, 398–99 (1993).

[68] *Id*. at 396 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)) (internal quotations omitted).

11

in *Martinez II* presented a sentencing memorandum to the court; *Martinez I* counsel joined in that memorandum.[69] His *Martinez II* counsel also told the court about Martinez's abused childhood, brain damage, and drug abuse.[70] Martinez has not alleged any other information that his *Martinez I* counsel could have found. The state courts' application of *Strickland* to this part of ground 2 was thus reasonable.

With respect to Martinez's claim that he was not competent to plead guilty, at sentencing the judge quoted the plea colloquy showing that he consulted with his lawyer and understood the proceedings against him.[71] Plus, during the plea hearing, there was confusion over how to set the sentencing hearing in *Martinez I* so that his sentence would run concurrently with the sentence in *Martinez II*, as described in the guilty plea agreement.[72] Martinez himself knew when the sentencing in *Martinez II* was calendared, and he corrected his counsel twice.[73] Under these circumstances, the Nevada Court of Appeals reasonably could have concluded that Martinez was competent to plead guilty. Ground 2 is without merit, so I deny relief on this second ground as well.

**3.     Ground 3—counsel coerced a guilty plea**

In ground 3, Martinez claims that counsel coerced him into pleading guilty. The Nevada Court of Appeals found no coercion, just candid advice:

> Martinez claimed counsel was ineffective for coercing him into pleading guilty. Specifically, he claimed counsel told him he would be convicted if he went to trial, he was facing the large

---

[69] Ex. 13 at 2 (ECF No. 7-13 at 3).

[70] Ex. 13 at 6–10 (ECF No. 7-13 at 7–11).

[71] Ex. 13 at 3–6 (ECF No. 7-13 at 4–7); *see also* Ex. 5 (ECF No. 7-5)).

[72] Ultimately, this was not a problem. One district judge presided over a joint sentencing in both cases.

[73] Ex. 5 at 5–6 (ECF No. 7-5 at 6–7).

12

habitual criminal enhancement, and his sentences could be run consecutive. Martinez failed to demonstrate counsel was deficient because counsel is not deficient for giving candid advice about the likely outcome of trial. Therefore, the district court did not err in denying this claim.[74]

The testimony before the grand jury, summarized in the fact section above, was enough to convict Martinez on all counts if the witnesses testified the same way at trial.[75] Martinez was already a five-time convicted felon in three separate cases, so he faced the possibility of life imprisonment without the possibility of parole under Nev. Rev. Stat. § 207.010(1)(b). As the Nevada Court of Appeals noted, effective assistance of counsel means that counsel must give candid advice, even if it is advice that the client doesn't like. Counsel told Martinez that he would be found guilty and sentenced to prison for the rest of his life not out of some desire to coerce him, but because that was the most likely outcome. The Nevada Court of Appeals reasonably applied *Strickland* in denying this claim. Ground 3 is also without merit. So, I deny relief on this final claim, too.

## Conclusion

IT THEREFORE IS ORDERED that **the petition for a writ of habeas corpus [ECF No. 3] is DENIED**. The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

. . .

---

[74] Ex. 44 at 3 (ECF No. 8-19 at 4).

[75] The possible exception to this would have been the value of the goods taken, to support the charge of grand larceny.

13

IT FURTHER IS ORDERED that **no certificate of appealability will issue** because I do not find that reasonable jurists would find my decision on any of these three grounds debatable or wrong.

Dated: March 31, 2019

_____
U.S. District Judge Jennifer A. Dorsey